United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 8, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-61037
_____

ROLAND ANDERSON,

Petitioner-Appellee,

versus

ROBERT L. JOHNSON, Commissioner,
Mississippi Department of Corrections

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Mississippi

_____

Before WIENER, BENAVIDES, and DENNIS, Circuit Judges.

WIENER, Circuit Judge:

Respondent-Appellant Robert L. Johnson, Commissioner of the Mississippi Department of Corrections ("State") appeals the district court's grant of § 2254 habeas relief to Petitioner-Appellee Roland Anderson ("Anderson"). We affirm.

## I. FACTS AND PROCEEDINGS

This petition for writ of habeas corpus stems from Roland Anderson's 1997 burglary conviction in the Circuit Court of Hinds County, Mississippi. Anderson was charged and convicted in connection with the attempted kidnapping and shooting of Dorothy Brister, a Mississippi bail bondsman and confidential informant for the Jackson Police Department and the Drug Enforcement Agency

("DEA"). On May 26, 1992, one day before Brister was scheduled to testify against a suspected drug dealer, an individual posing as a police officer arrived at her home. The imposter flashed a silver badge and Brister's twelve-year old daughter, Fredrika, opened the door for him. The imposter informed Brister that he was taking her into protective custody. Although Brister was suspicious, the imposter eventually coerced her into her rental car outside; when Brister attempted to flee, the imposter shot her once in the neck. Brister's live-in boyfriend, Arthur Gray, witnessed the attack and attempted, unsuccessfully, to apprehend the assailant. Brister remains partially paralyzed in her left hand as a result of the attack.

Although law enforcement officials showed Brister several photographs, she was unable to identify her attacker. Three years later, in July of 1997, while posting a bond at the Hinds County Detention Center, Brister overheard the voices of three men and suspected that one was the perpetrator. When she looked up, she immediately recognized Roland Anderson as her assailant. Anderson was arrested and charged with aggravated assault, impersonating a police officer, and burglary of an occupied dwelling with intent to kidnap. Both Brister and her daughter, Fredrika, identified Anderson in a photo line-up prior to trial; investigators did not ask Arthur Gray to identify Anderson.

Anderson was first tried in February 1997. The jury was

2

unable to reach a verdict, and the judge declared a mistrial. After a second trial in April 1997, the jury returned a verdict of guilty on all three charges. Two of the three charges (impersonating a police officer and assault) were dismissed post-trial as barred by the statute of limitations. Anderson was sentenced, as a habitual offender, to fifteen years in prison on the remaining burglary charge.

Anderson timely appealed his conviction, asserting four errors (1) constitutional and statutory speedy trial violations; (2) improper admission of evidence of other crimes; (3) a verdict against the weight of the evidence; and (4) improper sentencing as a habitual offender. In September 1999, the Mississippi Court of Appeals affirmed his conviction in a written opinion.[1] Anderson did not pursue discretionary review in the Mississippi Supreme Court.

In September 2000, Anderson filed, pro se, a petition for post-conviction relief in the Mississippi Supreme Court. Between his original state habeas petition and a supplemental brief, Anderson asserted a total of nine grounds for relief, including (1) ineffective assistance of counsel on appeal; (2) ineffective assistance of counsel at trial; (3) improper admission of evidence of other crimes; (4) evidence of "new material facts not previously presented"; (5) insufficient evidence to support a conviction; (6)

---

[1] Anderson v. State, 749 So. 2d 283 (Miss. Ct. App. 1999).

3

improper exclusion of evidence relating to the truth and veracity of a confidential informant; and (7) cumulative error. In February 2001, the Mississippi Supreme Court denied Anderson's petition and issued a one-page order concluding that "the issues Anderson raised on direct appeal are without merit, and appellate counsel was not ineffective under Strickland v. Washington, 466 U.S. 668 (1984), for not raising these issues." The court further held that "the Application for Leave to Proceed in the Trial Court is not well taken and should be denied."

In May 2001, Anderson filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Mississippi. In the petition, Anderson asserted five claims: (1) ineffective assistance of counsel on appeal; (2) ineffective assistance of counsel at trial, "where counsel failed to pursue an adequate investigation of the case and evidence"; (3) violation of his right to a speedy trial; (4) improper admission of evidence of prior bad acts; and (5) ineffective assistance of counsel at trial relating to sentencing as a habitual offender. In support of his petition, Anderson submitted the affidavit of Brister's boyfriend, Arthur Gray, one of two adult eyewitnesses to the crime. Gray attested that "Roland Anderson was nowhere around the scene of this shooting" and that "he would have testified on Mr. Anderson['s] behalf in his April 1997 trial if his attorney would have allowed him."

The case was referred to a magistrate judge, who appointed

4

counsel to represent Anderson and, over the State's objection, set the matter for an evidentiary hearing. After the hearing, the magistrate judge issued a report recommending that Anderson's writ be granted and that he be retried or released within 120 days following entry of final judgment. The magistrate judge concluded that two of Anderson's five claims were meritorious (1) the alleged ineffective assistance of trial counsel for failure to investigate, interview, and call eyewitness Arthur Gray and (2) the alleged ineffectiveness of appellate counsel for failure to investigate and raise the Gray issue on appeal and for failure to assert the ineffectiveness of trial counsel on direct appeal.

In a detailed report and recommendation, the magistrate judge held that both trial and appellate counsel were ineffective under <u>Strickland</u> and that the Mississippi Supreme Court's finding to the contrary constituted an unreasonable application of established federal law. The magistrate judge briefly addressed the State's claim that the petition was procedurally barred for failure to exhaust state remedies, finding that "our analysis should suffice to establish cause for any procedural default" and that "[t]he requisite 'prejudice' has been discussed throughout this report and recommendation."

After <u>de novo</u> review and consideration of the State's objections, the district judge adopted the recommendation of the magistrate judge in its entirety and entered a final judgment directing the State to retry Anderson within 120 days or dismiss

5

the charges against him. The State timely appealed. We stayed the district court's order pending appeal and heard oral argument on an expedited basis.

## II. ANALYSIS

## A. Exhaustion of State Remedies

### 1. Standard of Review

Whether a federal habeas petitioner has exhausted state remedies is a question of law reviewed <u>de</u> <u>novo</u>.[2]

### 2. Discussion

The threshold issue that we must consider is whether Anderson's claims are procedurally barred because he has failed to exhaust available state remedies. The State acknowledges that Anderson had included in his state post-conviction petition the same ineffective assistance claims presented in the federal petition and that Anderson identified both the <u>Strickland</u> standard and non-testifying eyewitness Arthur Gray by name. The State contends, however, that Anderson is procedurally barred from raising this claim in a federal habeas action because he did not substantiate the "conclusory allegations" raised in his state petition with the affidavit of Arthur Gray.

28 U.S.C. § 2254(b)(1) requires that federal habeas petitioners fully exhaust remedies available in state court before

---

[2] <u>Wilder v. Cockrell</u>, 274 F.3d 255, 259 (5th Cir. 2001); <u>Stevens v. Delaware Corr. Ctr.</u>, 295 F.3d 361, 368 (3d Cir. 2002).

proceeding in federal court.[3] This longstanding exhaustion requirement is not jurisdictional, but "reflects a policy of federal-state comity...designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights."[4]

To satisfy the exhaustion requirement, "a habeas petitioner must have fairly presented the substance of his claim to the state courts."[5] This requirement is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition.[6] We have consistently held that a "petitioner fails to exhaust state remedies when he presents material additional evidentiary support to the federal court that was not presented to

---

[3] Section 2254(b)(1) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
    (A) the applicant has exhausted the remedies available in the courts of the State; or
    (B)(i) there is an absence of available State corrective process; or
    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[4] Wilder, 274 F.3d at 260 (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)) (emphasis omitted).

[5] Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997) (citing Picard v. Connor, 404 U.S. 270, 275-76 (1971)).

[6] Id. (citing Anderson v. Harless, 459 U.S. 4, 6-7 (1982)).

7

the state court."[7]

Although exhaustion inquiries are fact-specific, as a general rule "dismissal is not required when evidence presented for the first time in a habeas proceeding <u>supplements</u>, but does not <u>fundamentally alter</u>, the claim presented to the state courts."[8] Courts have explained that "although a habeas petitioner will be allowed to present 'bits of evidence' to a federal court that were not presented to the state court," evidence that "places the claims in a significantly different legal posture must first be presented to the state courts."[9]

We have been called on to apply this familiar (though somewhat nebulous) standard on several occasions. In <u>Graham v. Johnson</u>,[10] we rejected, for failure to exhaust, a petitioner's attempt to present —— for the first time in federal habeas proceedings —— "significant evidentiary support" not previously submitted to the state court. The "new" evidence at issue in <u>Graham</u>, offered in

---

[7] <u>Graham v. Johnson</u>, 94 F.3d 958, 968 (5th Cir. 1996) (emphasis added).

[8] <u>Caballero v. Keane</u>, 42 F.3d 738, 741 (2d Cir. 1994)(citing <u>Vasquez v. Hillery</u>, 474 U.S. 254, 260 (1986))(emphasis added); <u>see also</u> 2 RANDY HERTZ & JAMES S. LIEBMAN, FEDERAL HABEAS CORPUS PRACTICE & PROCEDURE § 23.3c, at 982 (4th ed. 2001)("The controlling standard seems to be that the petitioner exhausts the factual basis of the claim as long as she did not either 'fundamentally alter the legal claim already considered by the state courts' or 'attempt[] to expedite federal review by deliberately withholding essential facts from the state courts.'").

[9] <u>Demarest v. Price</u>, 130 F.3d 922, 932 (10th Cir. 1997).

[10] 94 F.3d 958 (5th Cir. 1996).

support of the petitioner's claims of ineffective assistance of counsel and actual innocence, included affidavits of several eyewitnesses and alibis, a police report, two psychologist reports, and a firearms report.[11] After considering these nine "new" exhibits, we concluded that, because the petitioner had "presented significant evidentiary support...that was never presented to the state courts" he had not exhausted his state remedies and dismissal of his federal habeas petition was warranted.[12]

In Dowthitt v. Johnson,[13] however, we concluded that two supplemental affidavits, submitted for the first time in support of a federal habeas petition, did not render the petitioner's claims unexhausted. In Dowthitt, the petitioner asserted, inter alia, a claim of ineffective assistance of counsel founded largely on his attorney's failure to present mental-illness evidence during the penalty phase of his trial. In federal habeas proceedings, Dowthitt introduced the affidavits of two mental health experts in support of his claims. Even though the affidavits had not been presented to the state court, we concluded that because the petitioner "had presented to the state habeas court his assertions of mental illness," the "affidavits add[ed] little to those

---

[11] Id. at 965.

[12] Id. at 969.

[13] 230 F.3d 733 (5th Cir. 2000).

9

claims"[14] and did not warrant dismissal for failure to exhaust state remedies.

In this regard we deem instructive the Seventh Circuit's analysis in <u>Boyko v. Parke</u>,[15] a case that presented exhaustion issues strikingly similar to those presented by this case. In <u>Boyko</u>, the petitioner had consistently asserted that his trial counsel was ineffective in failing to consider and raise particular defenses, including the fact that he was suffering from post traumatic stress disorder ("PTSD").[16] After the state court denied his petition, Boyko pursued federal habeas relief, again urging ineffective assistance of counsel. In the federal proceedings, however, he attempted to introduce "new" evidence — the transcript of a juvenile hearing that ostensibly would have alerted an effective attorney to the potential PTSD defense.[17]

The Seventh Circuit concluded that Boyko had exhausted his state remedies "even though [he] did not base his arguments in the state court on trial counsel's failure to obtain the transcript."[18] The appellate court emphasized that the petitioner was not seeking to "present a ground of ineffectiveness that is entirely

---

[14] <u>Id.</u> at 746.

[15] 259 F.3d 781 (7th Cir. 2001).

[16] <u>Id.</u> at 784.

[17] <u>Id.</u> at 787.

[18] <u>Id.</u> at 789.

10

independent of the grounds presented in the state courts" and that Boyko had argued consistently that his counsel was ineffective in failing to pursue a PTSD defense.[19]  The transcript, the court reasoned, did "not change the substance of these arguments" but "merely supplies an additional piece of evidence that counsel would have found had he pursued" the relevant theories.[20]

In this case, Anderson's claims are unquestionably in a comparatively "stronger evidentiary posture" than they were in state court.[21]  Nevertheless, several facts militate in favor of exhaustion in this admittedly close case.  First, the portion of Anderson's state post-conviction brief dedicated to ineffective assistance is remarkably detailed in both fact and law.[22]  Citing Strickland, Anderson argued to the state court that he was "denied effective assistance of counsel where counsel failed to pursue an adequate investigation of [the] case and evidence against petitioner."  Anderson further explained that "counsel has a duty

---

[19] Id.

[20] Id.; see also Stevens v. Delaware Corr. Ctr., 295 F.3d 361, 370 (3d Cir. 2002) (concluding that petitioner's submission of affidavits in support of failure to investigate claim did not render claims unexhausted because the "new" evidence "presented no new facts but rather merely recite[d] facts already submitted to state courts").

[21] Joyner v. King, 786 F.2d 1317, 1320 (5th Cir. 1986).

[22] Exhaustion requires only that the federal claim has been fairly presented to the state's highest court before a petitioner pursues federal relief, either via direct appeal or state post-conviction proceedings. Orman v. Cain, 228 F.3d 616, 620 (5th Cir. 2000).

to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case...Arthur Gray, who was the boyfriend of Ms. Dorothy McKee [Brister] at the time she was shot was eyewitness [sic] and could have identified the shooter." Significantly, in his state petition, Anderson stated unequivocally that "[i]f Mr. Anderson's trial counsel had interviewed and subp[oenaed] him to trial, Mr. Gray would have identified the petitioner as not the person that he...know as the shooter [sic]."

Anderson has argued diligently that his attorneys were constitutionally ineffective in failing to investigate and interview Arthur Gray. He has consistently asserted that if Gray had been interviewed and called to testify at trial, he would have exonerated Anderson. The "new" evidence (Gray's affidavit) does not "fundamentally alter" Anderson's state claim; it merely confirms what he has been asserting all along. In light of all this, we conclude that the affidavit of Gray is a "supplement" to the record presented to the state court, but does not "place the claims in a significantly different legal posture."[23] As such, we hold as a matter of law that Anderson's claims were exhausted in state court.[24]

---

[23] Demarest, 130 F.3d at 932.

[24] This result is not meant to overrule our holdings in Joyner v. King, 786 F.2d 1317, 1320 (5th Cir. 1986); Brown v. Estelle, 701 F.2d 494, 496 (5th Cir. 1983); and Hart v. Estelle, 634 F.2d 987, 988 (5th Cir. 1981). First, as these decisions were issued prior to

12

In reaching this conclusion, we note also that Anderson did not "attempt[] to expedite federal review by deliberately withholding essential facts from the state courts."[25]  On the contrary, as noted by the magistrate judge, any failure to develop the facts in support of his petition was not the result of his lack of diligence; "the constitutional violation itself prevented the discovery of Gray's testimony," and there is no evidence that Anderson intentionally withheld this evidence until he reached a more receptive forum.  Furthermore, if the state court had held an evidentiary hearing, Gray's exculpatory testimony likely would have been elicited, as it was in the federal proceedings.  Accordingly, we agree with the district court's determination that Anderson has exhausted his available state remedies, so we proceed to address the merits of his federal habeas petition.[26]

(or soon after and without reference to) the Supreme Court's decision in Vasquez v. Hillery, they are of limited relevance here. In Vasquez, the Court explained that supplemental evidence that does not "fundamentally alter the legal claim already considered by the state courts" does not "require that the [habeas petitioner] be remitted to state court for consideration of that evidence." Vasquez, 474 U.S. at 622. Second, we emphasize that whether evidence "fundamentally alters" or merely "supplements" the state petition is an inquiry that is, by necessity, case and fact specific.

[25] Vasquez, 474 U.S. at 260; see also 2 HERTZ & LIEBMAN § 23.3c, at 982 n.57 (explaining that "[i]n general, the courts apply the 'factual similarity' requirement in a less stringent manner when the 'new' facts at issue were discovered during federal proceedings and were not easily discoverable before then").

[26] We recognize that the Tenth and Fourth Circuits have arrived at contrary results when confronted with somewhat analogous (but distinguishable) facts. In Demarest v. Price, the habeas petitioner

13

**B.    Ineffective Assistance of Counsel**

**1. Standard of Review**

In a habeas corpus appeal, we review findings of fact for clear error and issues of law de novo using the same standards as the district court.[27] Because Anderson's petition for habeas relief was filed in 2001, the Anti-Terrorism and Effective Death Penalty

---

introduced, in support of his federal petition, the testimony of several new witnesses as evidence of his contention that "more thorough preparation by [trial counsel] would have uncovered evidence that very significantly strengthened" his defense. 130 F.3d 922, 936 (10th Cir. 1997). The Tenth Circuit, reversing the district court, held that because the new evidence "does not merely supplement evidence in the state court record" but "is more like a 180 degree turn," dismissal was warranted. We agree, as evidenced by our holding in Graham, that substantial new evidence rising to the level of a "180 degree turn" renders a claim unexhausted. In Demarest, as in Graham, the petitioner sought to introduce new factual allegations, including, for the first time, the names of several exculpatory witnesses. In contrast, Anderson has consistently identified one eyewitness, Arthur Gray, and seeks only to supplement his petition with Gray's affidavit. In Wise v. Warden, Maryland Penitentiary, 839 F.2d 1030 (4th Cir. 1988), the petitioner alleged, in both state and federal proceedings, that the State had withheld critical exculpatory evidence — an immunity agreement between a key prosecution witness and the State. In support of his federal petition, however, the petitioner offered, for the first time, the actual agreement, i.e., "direct proof" of his claims. Id. at 1034. The Fourth Circuit concluded that "[t]he new evidence significantly alter[ed] the posture of [his] claim" and that the state court "must be given an opportunity to evaluate the claim in its new posture and to make relevant findings of fact to which the federal courts must in turn defer." Id.  We rejected such a per se rule in Dowthitt, where some supplemental "proof" of a claim was added in the federal proceedings, but the claim was nevertheless considered exhausted. Today we abide by the Supreme Court's rule in Vasquez; Anderson has exhausted state remedies because the supplemental evidence submitted in federal proceedings does not "fundamentally alter" the claim previously presented to the state court.

[27] Catalan v. Cockrell, 315 F.3d 491, 492 (5th Cir. 2002).

Act ("AEDPA") governs this appeal. Under the AEDPA, we cannot grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law."[28]

The Supreme Court has recently offered direction for courts assessing "unreasonable applications" of federal law. In Williams v. Taylor,[29] the Court instructed lower courts to ask whether "the state court's application of clearly established federal law was objectively unreasonable."[30] The Court emphasized, and we have since reiterated, the "critical distinction" between an "unreasonable application" of federal law and an erroneous or

---

[28] 28 U.S.C. § 2254(d)(1). The statute provides in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

[29] 529 U.S. 362 (2000).

[30] Id. at 409. The Court also explained that a state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Id. at 405-06 (emphasis added).

incorrect application of federal law.[31] "[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly...that application must also be unreasonable."[32] In this circuit, a federal habeas court reviews "only a state court's 'decision,' and not the written opinion explaining that decision."[33]

**2. Discussion**

The "clearly established federal law" applicable to Anderson's claim is the familiar two-prong test of <u>Strickland v. Washington</u>.[34] Under <u>Strickland</u>, Anderson must demonstrate both that his attorney's performance was deficient ("cause") and that this deficiency prejudiced his defense ("prejudice"). Anderson contends that both his trial and appellate counsel were constitutionally ineffective: trial counsel in failing to investigate, interview eyewitnesses, and call exculpatory witness Arthur Gray to testify;

---

[31] <u>Neal v. Puckett</u>, 286 F.3d 230, 236 (5th Cir. 2002) (en banc).

[32] <u>Williams</u>, 529 U.S. at 411.

[33] <u>Neal</u>, 286 F.3d at 246 (explaining that "our focus should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence."). <u>Compare</u> <u>Lindh v. Murphy</u>, 96 F.3d 856, 871 (7th Cir. 1996) (en banc).

[34] 466 U.S. 668 (1984); <u>Neal</u>, 286 F.3d at 235 ("It is past question that the rule set forth in <u>Strickland</u> qualifies as 'clearly established [f]ederal law, as determined by the Supreme Court of the United States.")(quoting <u>Williams</u>, 529 U.S. at 391).

appellate counsel in failing to uncover and argue both trial counsel's errors and Arthur Gray's exculpatory testimony.

**a. Cause**

To establish a threshold deficient performance, Anderson must first demonstrate that "counsel's representation fell below an objective standard of reasonableness."[35] Courts "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."[36] In Strickland, the Court specifically addressed so-called "failure to investigate" claims, explaining that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[37] The Court further explained, however, that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[38] In short, "counsel has a duty to make reasonable investigations <u>or</u> to make a reasonable decision that makes

---

[35] <u>Strickland</u>, 466 U.S. at 688.

[36] <u>Id.</u> at 690.

[37] <u>Id.</u>

[38] <u>Id.</u> at 691. The Supreme Court recently clarified these familiar standards in <u>Wiggins v. Smith</u>, No. 02-311, 2003 WL 21467222, at *8(U.S. June 26, 2003) (explaining that in <u>Strickland</u> "we defined the deference owed such strategic judgments in terms of the adequacy of the investigations supporting those judgments" and emphasizing that the court's focus in failure to investigate claims is "whether the investigation supporting counsel's decision . . . <u>was itself reasonable</u>").

17

particular investigations unnecessary."[39]

Guided by <u>Strickland</u>, we have held that counsel's failure to interview eyewitnesses to a charged crime constitutes "constitutionally deficient representation."[40] In <u>Bryant v. Scott</u>, the defense attorney failed to interview two eyewitnesses and "restricted his pretrial investigation to discussions with [the defendant], review of the indictment against [the defendant], and examination of the prosecutor's file."[41] We concluded that "information relevant to [the] defense might have been obtained through better pretrial investigation of the eyewitnesses, and a reasonable lawyer would have made some effort to investigate the eyewitnesses' testimony."[42]

Notably, in <u>Bryant</u>, we expressly rejected the notion that "vigorous" cross-examination of eyewitnesses at trial can "cure" counsel's failure to interview the witnesses before trial. We pointed to the obvious fact that effective cross-examination "does not necessarily indicate that a reasonable lawyer, viewing the trial <u>ex</u> <u>ante</u>, would have regarded an interview of the eyewitnesses

---

[39] <u>Id.</u> (emphasis added).

[40] <u>Bryant v. Scott</u>, 28 F.3d 1411, 1418 (5th Cir. 1994).

[41] <u>Id.</u>

[42] <u>Id.</u>; <u>see</u> <u>also</u> <u>Thomas v. Lockhart</u>, 738 F.2d 304, 308 (8th Cir. 1984) (finding ineffective assistance where counsel's "investigation of the case consisted of reviewing the investigative file of the prosecuting attorney" and holding that the "investigation fell short of what a reasonably competent attorney would have done").

18

as unnecessary."[43]   The panel also noted that even if cross-examination was effective, "that is not to say it could not have been improved by prior investigation."[44]

Moreover, in Bryant, we squarely rejected the argument made by the State here — that a failure to interview witnesses is excusable as "a strategic decision" if the witnesses would not have been credible.   Acknowledging that a lack of credibility might support a strategic decision not to call a witness to testify at trial, we explained that a witness's character flaws cannot support a failure to investigate.   Without so much as contacting a witness, much less speaking with him, counsel is "ill-equipped to assess his credibility or persuasiveness as a witness."[45]

Not surprisingly, other courts have also concluded that the "failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness."[46]   Although they remain mindful that "the range of reasonable professional judgments is wide," courts recognize that "[i]neffectiveness is generally clear in the context of a complete failure to investigate because

---

[43] Id. at 1419.

[44] Id.

[45] Id.; see also Wiggins, 2003 WL 21467222, at *10 ("[T]he 'strategic decision' the state courts and respondents all invoke to justify counsel's limited pursuit of mitigating evidence resembles more a post-hoc rationalization of counsel's conduct than an accurate description of their deliberations prior to sentencing.").

[46] United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

19

counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when [he] has not yet obtained the facts on which such a decision could be made."[47] Strickland simply "does not require...defer[ence] to decisions that are uninformed by an adequate investigation into the controlling facts and law."[48]

In this case, Anderson has conclusively established that trial counsel was deficient, i.e., that his "representation fell below an objective standard of reasonableness." During the evidentiary hearing, Anderson's trial counsel, who was disbarred in 1999, explained the "reasons" underlying his decision not to interview Arthur Gray: "There was nothing in the discovery that I was provided from the police and from the D.A.'s office that gave me any indication that he [Gray] would be a favorable witness to Roland Anderson." Counsel further explained that "ordinarily," once he was provided discovery from the District Attorney that indicated a witness was "not favorable," he would not independently interview that witness. According to counsel, he "probably" realized the week before trial that the State would not call Arthur Gray to testify and attempted to highlight Gray's absence to Anderson's advantage at trial.

We conclude that trial counsel's admitted failure to

---

[47] Id. (citing Strickland, 466 U.S. at 690-91).

[48] United States v. Drones, 218 F.3d 496, 500 (5th Cir. 2000).

20

investigate under these circumstances rises to the level of a constitutionally deficient performance. Counsel conceded that he relied exclusively on the investigative work of the State and based his own pretrial "investigation" on assumptions divined from a review of the State's files. Given the gravity of the charges, and the fact that there were only two adult eyewitnesses to the crime, it is evident that "a reasonable lawyer would have made some effort to investigate the eyewitnesses' testimony"[49] and that trial counsel's representation was deficient.

The State's attempts to characterize trial counsel's representation as "effective" are feckless. The State emphasizes that (1) trial counsel did mount a defense, calling both Anderson's ex-wife and a wedding photographer to testify about his appearance at the time of the crime; (2) counsel "vigorously cross-examined" the State's witnesses; (3) the decision not to interview Gray was reasonable based on the State's discovery, which indicated that Gray's description of the assailant matched that of Brister and her daughter; (4) trial counsel effectively used the State's decision not to call Gray to Anderson's "strategic" advantage; and (5) trial counsel successfully moved, post-trial, for the dismissal of two counts.

Each of these rationalizations misses the mark. The fact that trial counsel was marginally successful in some respects does not

---

[49] Bryant, 28 F.3d at 1418.

21

excuse his complete failure to investigate and prepare <u>before</u> trial. More importantly, there is no evidence that counsel's decision to forego investigation was <u>reasoned</u> at all, and it is, in our opinion, far from <u>reasonable</u>.[50] Counsel's failure to investigate was not "part of a calculated trial strategy" but is likely the result of either indolence or incompetence.[51] Finally, the State's attempt to distinguish <u>Bryant</u> by emphasizing that the overlooked eyewitnesses in that case were "the cornerstone of the State's case," is feeble at best. In a claim grounded in failure to interview, the "quality" and potential persuasiveness of the eyewitness is largely immaterial; indeed, <u>if</u> trial counsel had interviewed Gray, he might well have proven to be the "cornerstone" of the defense.[52]

### b. Prejudice

Under <u>Strickland</u>'s second prong, Anderson must establish "prejudice" —— a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[50] <u>Drones</u>, 218 F.3d at 500 (citing <u>Strickland</u>, 466 U.S. at 690-91).

[51] <u>Nealy v. Cabana</u>, 764 F.2d 1173, 1178 (5th Cir. 1985); <u>see also</u> <u>Loyd v. Whitley</u>, 977 F.2d 149, 158 (5th Cir. 1992) (explaining that "[w]hether counsel's omission served a strategic purpose is a pivotal point in <u>Strickland</u> and its progeny" and that this "crucial distinction between strategic judgment calls and plain omissions has echoed in the judgments of this court").

[52] We agree with the magistrate judge's observation that "[w]hen the State confirmed it would not call Gray, this should have been a 'red flag' alerting defense counsel that Gray may have been useful to the defense."

22

different."[53]  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."[54]  Under the discrete facts of this case, we conclude that Anderson has met this "substantial burden."

At trial, the State's case rested primarily on the eyewitness testimony of the victim and her daughter.  The victim's identification was based on her fortuitous encounter with Anderson some three years after the crime; the daughter was a child when she witnessed the incident three years earlier.  The record reflects that no other eyewitnesses testified at trial and, apparently, there was no physical evidence linking Anderson to the crime.  In light of this relatively "weak" case,[55] there is a reasonable probability that "but for" trial counsel's failure to interview and call Arthur Gray to testify, the result of the proceeding would have been different.  As noted, Gray was one of only two adults to witness the events.  Certainly his testimony would have been a powerful rebuttal to that of the victim and her minor daughter.  Anderson had been tried once before, on the same charges and presumably on the same evidence, and the jury was unable to reach

---

[53] Strickland, 466 U.S. at 694.

[54] Id.

[55] The State grossly mischaracterizes the evidence against Anderson as "overwhelming." The record indicates that the State called six witnesses in its case-in-chief: Dorothy and Fredrika Brister, Dexter Patrick, Anderson's former cellmate (a jailhouse informant), and three law enforcement officials.

23

a verdict.  Accordingly, we conclude that Anderson has established the requisite cause and prejudice required to establish ineffective assistance of trial counsel.[56]

This does not, however, end our analysis; this constitutional failing must be assessed through the prism of the AEDPA's highly deferential standards.  Neal instructs that courts are to look only to the "ultimate legal conclusion that the state court reached and not [to] whether the state court considered and discussed every angle of the evidence."[57]  The Mississippi Supreme Court ruled on Anderson's claims in a one-paragraph order, without specifically addressing the ineffectiveness of trial counsel.[58]  Given counsel's

---

[56] As we conclude that trial counsel was ineffective, we do not reach the issue of appellate counsel's performance. Catalan, 315 F.3d at 493 n.2 ("Because we find ineffective assistance with respect to [trial counsel] we do not reach the issue of appellate counsel's performance.").

[57] Neal, 286 F.3d at 246.

[58] In a one-page order denying state habeas relief the Mississippi Supreme Court explained

> Anderson alleges that he received ineffective assistance of counsel on direct appeal in that counsel failed to raise certain issues on appeal. Anderson also alleges there is newly discovered evidence which raises doubt about the validity of his conviction. After due consideration the panel finds that the issues Anderson would have raised on direct appeal are without merit, and appellate counsel was not ineffective under Strickland v. Washington, 466 U.S. 668 (1984), for not raising these issues. The panel further finds that the unsigned affidavit relied on by Anderson does not amount to newly discovered evidence, and the Application for Leave to Proceed in the Trial Court is not well taken and should be denied.

24

admitted failure to investigate and interview at least one crucial eyewitnesses, and <u>assuming</u> the Mississippi court applied <u>Strickland</u>,[59] we conclude that Anderson has established a <u>Strickland</u> violation and that the Mississippi state court's "ultimate legal conclusion" to the contrary was objectively unreasonable.

### III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

The affidavit referenced in the court's order is not that of Arthur Gray, but was in support of Anderson's unrelated claim of "newly discovered evidence."

[59] <u>See</u>, <u>e.g.</u>, <u>Catalan</u>, 315 F.3d at 492 n.3 ("assuming" that state court applied <u>Strickland</u>, because the parties briefs focused on <u>Strickland</u>, even though the state court did not issue a written opinion).