**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 28, 2009

Charles R. Fulbruge III
Clerk

No. 08-70031

FREDERICK BELL,

Petitioner-Appellant,

versus

CHRISTOPHER B. EPPS,
Commissioner, Mississippi Department of Corrections,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
No. 3:07-CV-212

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Frederick Bell appeals the denial of his petition for writ of habeas corpus.
We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

I.

On May 6, 1991, Robert "Bert" Bell ("Bert Bell," no relation to the petitioner) was shot and killed at Sparks' Stop-and-Go, a grocery store in Grenada County, Mississippi, where he worked as a clerk. Later that day, Frederick Bell ("Bell") committed an unrelated murder in Memphis, Tennessee. On May 7, Bell was arrested for the Memphis murder along with Anthony Doss, Frank Coffey, and Bernard Gladney. Bell, Doss, and Coffey were interviewed concerning the Mississippi murder two days later, and on July 19, Bell and Doss were indicted for the murder of Bert Bell during the commission of an armed robbery. Bell's trial began on January 26, 1993.

As the court *a quo* explained, "[n]o testimony was given at trial about what actually happened inside Sparks' Stop-and-Go on May 6, 1991, during the time Bert Bell was murdered." *Bell v. Epps*, No. 3:04-CV-212-B, 2008 WL 2690311, at *2 (N.D. Miss. June 20, 2008) (*Bell III*). Instead, the state presented testimony laying out the following narrative:

> [Early on the afternoon of May 6, Bell, Doss, Coffey, and Robert Kennedy James] left Coffey's house for the short journey up to Sparks'. Testimony showed that the four of them entered Sparks' and purchased some chips and beer from Bert Bell. They went outside, sat on a picnic table, drank the beer and ate the chips. Bell talked of going to Memphis and said that he needed some money. As they talked, he announced he was going to rob the store and showed the group a .22 caliber pistol which he had in his possession. Doss also had a gun at this point, but, apparently, it would not fire. James and Coffey testified that they refused to take part in the action and departed the scene as Bell and Doss went in the store. A minute or so later, James and Coffey heard gunshots and hollering.
>
> When Bell and Doss caught up with the other two, they showed them a .38 caliber pistol which they had taken from the store along with a box of bullets and a money bag. At this point, Bell threatened to kill James because he did not want any witnesses. Coffey and Doss stepped in to prevent this. Both James and

Coffey testified that Bell said he shot Bert.

> After the incident Bell, Doss and Coffey were taken to Memphis by Bernard Gladney. On the way to Memphis, Bell again said he wanted to kill James to prevent him from telling anyone about the Grenada murder. According to the criminal investigator in charge, two of the guns were recovered from the house where Bell was found in Memphis. The third was found in Gladney's vehicle.

*Bell v. State*, 725 So. 2d 836, 841 (Miss. 1998), *cert. denied*, 526 U.S. 1122 (1999) (*Bell I*). The state's forensic pathologist testified "that Bell died from one wound to the left forehead, one wound to the right chest, and one wound to the left chest." *Bell III*, 2008 WL 2690311, at *3. The forehead wound, according to the state's ballistics expert, was fired from a small-caliber weapon consistent with the one that Bell had reportedly displayed before the murder, and the wounds to Bert Bell's chest had been fired from a .38 caliber gun that was among the weapons seized in Memphis. *Id.* A .38 caliber gun, a box of shells, and a money bag were taken from the store during the robbery. *Id.*

Bell presented only his own testimony in defense. He claimed to have been in Memphis at his grandmother's house throughout the day of Bert Bell's murder and for three weeks prior, that he saw Coffey and Doss in Memphis when they arrived from Mississippi on the evening of May 6, and that he hid two guns for Doss that night. Bell presented no witnesses to corroborate his alibi. In addition to bringing James and Coffey, the state tendered James's sister and Coffey's girlfriend to rebut Bell's alibi with testimony that they had seen Bell in Grenada County. *Id.*

The jury found Bell guilty of capital murder and sentenced him to death. *Id.* The Mississippi Supreme Court affirmed in *Bell I*. Bell's petition for collateral relief failed in state court as well. *Bell v. State*, 879 So. 2d 423 (Miss. 2004), *cert. denied*, 543 U.S. 1155 (2005) (*Bell II*). Bell then filed the instant federal habeas petition, which was denied. The district court granted a certificate of ap-

pealability on the two issues now before this court, both concerning the adequacy of Bell's counsel's representation.

## II.

Bell asserts that his counsel was constitutionally deficient under *Strickland v. Washington*, 466 U.S. 668 (1984), in failing to investigate an alibi defense before trial. The district court held, and the state now argues, that because Bell did not present his alibi-investigation claim to the Mississippi state courts in the same factual posture as in the federal district court, it is procedurally barred.[1] *Bell III*, 2008 WL 2690311, at *15. For this court to consider Bell's arguments, he must have (1) exhausted his state remedies[2] and (2) done so properly, in compliance with state procedures.[3]

This court has summed up the standard for exhaustion as follows:

> To satisfy the exhaustion requirement, a habeas petitioner must have fairly presented the substance of his claim to the state courts. This requirement is not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition. We have consistently held that a petitioner fails to exhaust state remedies when he presents *material* additional evidentiary support to the federal court that was not presented to the state court.

---

[1] *See* 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state-law remedies).

[2] *See Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999) (per curiam).

[3] *See Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). The doctrines of exhaustion and procedural default are complementary:

> A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him. In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.

*Coleman v. Thompson*, 501 U.S. 722, 732 (1991) (citations omitted).

> Although exhaustion inquiries are fact-specific, as a general rule dismissal is not required when evidence presented for the first time in a habeas proceeding *supplements*, but does not *fundamentally alter*, the claim presented to the state courts. Courts have explained that although a habeas petitioner will be allowed to present bits of evidence to a federal court that were not presented to the state court, evidence that places the claims in a significantly different legal posture must first be presented to the state courts.

*Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003) (footnotes and quotation marks omitted). On appeal, Bell argues that his new evidence supplements, without fundamentally altering, the alibi-investigation claims he fairly presented in the state courts.

In *Anderson*, the petitioner claimed that his trial counsel was constitutionally ineffective for failing to interview and subpoena an eyewitness who would have testified that the petitioner was not the man he saw commit the crime. *Id.* at 388. In his *pro se* state petition, the petitioner had identified "the non-testifying eyewitness" by name, and in federal court he added an affidavit from that witness. *Id.* at 386. The affidavit, we concluded, "d[id] not 'fundamentally alter' Anderson's state claim; it merely confirm[ed] what he ha[d] been asserting all along." *Id.* at 388. Similarly, in *Dowthitt v. Johnson*, 230 F.3d 733, 746 (5th Cir. 2000), where the petitioner "had presented to the state habeas court his assertions of mental illness," his inclusion in federal court of affidavits from two experts confirming that diagnosis did not render those assertions unexhausted.

*Anderson* and *Dowthitt* bear a certain resemblance to the present case. Bell has consistently argued that Gladney would have corroborated his alibi if he had been called at trial. In state court, Bell claimed that Gladney would have testified, if contacted by Bell's trial counsel, that Bell was in Memphis at the time of Bert Bell's murder and that investigation of Gladney's testimony would have revealed still more alibi witnesses. In the district court, Bell brought nine signed statements and affidavits from various persons, including Gladney, as-

serting the same thing. In bringing Gladney's affidavit to federal court, at least, Bell has merely presented evidence confirming that Gladney would have said what he has said he would say. All this militates in favor of finding that Bell's alibi-investigation claim, at least as it concerns Gladney, was presented in federal court in a similar factual posture and is therefore exhausted.[4]

Other considerations, however, dictate the opposite conclusion. To begin with, Bell never argued in federal district court that the statements he submitted were only supplemental. That court specifically noted that failure,[5] and Bell has not suggested on appeal that the court misunderstood his argument. "[W]e have repeatedly held that a contention not raised by a habeas petitioner in the district court cannot be considered for the first time on appeal from that court's denial of habeas relief."[6]

Furthermore, Bell's argument is procedurally barred for failure to present it properly in state court. Because federal courts do not review state court decisions resting on "independent and adequate" state-law grounds, the procedural bar prevents federal courts from considering federal habeas claims "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729-30.

Under Mississippi law, all claims for post-conviction collateral relief rest-

---

[4] *Anderson* provides no support to Bell with regard to the other alibi witnesses whose affidavits he presented in federal district court. In the state courts, he never mentioned those witnesses or their likely testimony and so deprived those courts of any opportunity to consider them. *See Smith v. Quarterman*, 515 F.3d 392, 402-03 (5th Cir. 2008) (distinguishing *Anderson* and *Dowthitt* on that basis). As to those witnesses, then, Bell's *Washington* claim is unquestionably barred. He has not tried to overcome that bar by "demonstrat[ing] cause for his default and actual prejudice or show[ing] that the failure to consider his claims will result in a fundamental miscarriage of justice." *Id.* at 403 (quotation marks omitted).

[5] *Bell III*, 2008 WL 2690311, at *15 n.16

[6] *Goodrum v. Quarterman*, 547 F.3d 249, 259 n.49 (5th Cir. 2008) (quoting *Johnson v. Puckett*, 930 F.2d 445, 448 (5th Cir. 1991)), *cert. denied*, 129 S. Ct. 1612 (2009).

ing on "facts which are not within the prisoner's personal knowledge" must include "[a]ffidavits of the witnesses who will testify and copies of documents or records that will be offered" as evidence. MISS. CODE ANN. § 99-39-9(1)(e). The Mississippi Supreme Court, in denying Bell's argument that "counsel was ineffective because he failed to secure the attendance of witnesses to corroborate his alibi," pointed out that Bell had not brought affidavits from Gladney or anyone else and, except for Gladney, had not named any of the witnesses he suggested would have supported him. In Gladney's case, Bell brought only the transcript of Bell's extradition hearing at which Gladney had testified. *Bell II*, 879 So. 2d at 440.[7]

There is no question that Bell was required to bring affidavits from Gladney and other alleged alibi witnesses.[8] In *Washington*, 466 U.S. at 691-92, the Court required a showing of prejudice resulting from ineffective assistance, and Bell could not have established prejudice resulting from either failure to investigate or failure to present alibi witnesses without bringing live testimony from those witnesses. Because witnesses such as Gladney would have had to testify, the § 99-39-9(1)(e) affidavit requirement applies. Thus, even if Bell "fairly presented" the general substance of his alibi-investigation claim in state court, and even if the affidavits he brought in the district court supplemented the claims he had asserted all along, he failed to comply with state procedural requirements.

In light of Bell's failure to bring the required affidavits, the court dis-

---

[7] The Mississippi Supreme Court cited *Lewis v. State*, 776 So. 2d 679, 682 (Miss. 2000), for the proposition that "the statute requires affidavits of those witnesses that will testify" in support of state habeas. *Bell II*, 879 So. 2d at 440.

[8] Bell has not argued that the extradition hearing transcript constitutes a Gladney "affidavit" within the meaning of § 99-39-9. *See Wilcher v. State*, 862 So. 2d 719, 744 (Miss. 2003) (requiring that an affidavit be written or printed under oath, confirmed by oath or affirmation taken before a person with authority to administer the oath or affirmation). The Mississippi Supreme Court appears not to have taken it as such. *See Bell II*, 879 So. 2d at 440.

missed his claim concerning the attendance of alibi witnesses as "without merit." *Bell II*, 879 So. 2d at 440. Such an obvious statement by the Mississippi Supreme Court that state law precluded consideration of Bell's claim easily constitutes reliance on an independent state-law ground.[9] Because the state's highest court relied on that ground, we defer to its denial of relief.[10]

Bell could have sought to excuse his state court procedural default by showing cause and prejudice or by demonstrating that ignoring the federal claim

---

[9] *Coleman*, 501 U.S. at 732-33 (describing a "conclusive presumption" that there is a state law ground when the state court says so "clearly and expressly") (quoting *Michigan v. Long*, 463 U.S. 1032, 1041 (1983)). Of course, "a state procedural rule barring federal habeas review of a federal claim must be *adequate*" as well. *Amos*, 61 F.3d at 339. Adequacy requires the state courts to have "strictly or regularly applied [the rule] evenhandedly to the vast majority of similar claims." *Id.* (citing *Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989)) (emphasis omitted).

We presume that procedural bars asserted by state courts are adequate unless the petitioner makes a showing to the contrary. *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009) (per curiam). Bell makes no objection to the adequacy of § 99-39-9, for example by drawing our attention to cases in which the Mississippi Supreme Court has declined to apply it. Besides, that court has indeed considered state habeas petitions precluded for failure to comply with § 99-39-9, and district courts in this circuit have accordingly considered those claims defaulted. *See Stewart v. Epps*, No. 2:06-CV-164, 2007 WL 1826924, at *1-*2 (N.D. Miss. June 22, 2007). The petitioner in *Anderson* seems to have made the same error that Bell did here in failing to present affidavits to the Mississippi Supreme Court, but the state court in that case did not say that it was relying on that default in denying relief, so there was no independent and adequate state ground on which this court could rely. *Anderson*, 338 F.3d at 385-86.

[10] The Mississippi Supreme Court also found, in the alternative, that Bell's counsel's investigation of Bell's alibi was adequate on the merits. *Bell II*, 879 So. 2d at 433-34. This court must apply the procedural bar nonetheless, for an alternative conclusion on the merits does not vitiate the state court's procedural holding. *Hughes v. Dretke*, 412 F.3d 582, 592-93 (5th Cir. 2005) (citing *Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir. 1987)).

The fact that the Mississippi Supreme Court, on its own terms, dismissed the *investigation* of Bell's alibi on the merits and the *presentation* of alibi witnesses by applying § 99-39-9 is not material. *Compare Bell II*, 879 So. 2d at 433-34, *with id.* at 440. Section 99-39-9 applies to both.

would result in a fundamental miscarriage of justice.[11]  A showing of cause requires an "objective external factor [that] impeded the defense counsel's ability to comply with the state's procedural rules"; miscarriage of justice requires a showing of "actual innocence." *Martin v. Maxey*, 98 F.3d 844, 849 (5th Cir. 1996) (quoting *Hill v. Black*, 932 F.2d 369, 372-73 (5th Cir. 1991)).  Bell has not made any such showings.  His argument that his trial counsel was inadequate for failure to investigate witnesses to corroborate his alibi is therefore both waived and procedurally barred.

## III.

Bell claims that his trial counsel was ineffective at sentencing for failure to develop additional testimony on potential mitigating factors.  To challenge his attorney's representation, Bell must show that it "fell below an objective standard of reasonableness," *Washington*, 466 U.S. at 688, and that it resulted in prejudice, *id.* at 691-92.  Bell's sentencing claim was adequately developed in state court, so it is analyzed under the usual standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Thus, because the Mississippi Supreme Court determined, on the merits, that Bell had received constitutionally adequate assistance of counsel at sentencing, we can grant relief only on a finding that that conclusion "was contrary to, or involved an unreasonable application of," the *Washington* standard.[12]

The Mississippi Supreme Court explained that Bell's counsel interviewed Bell's mother, grandmother, brother, and three elementary school teachers and

---

[11] *Coleman*, 501 U.S. at 749-50 (quoting *Murray v. Carrier*, 477 U.S. 478, 485, 495 (1986)).

[12] 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 391 (2000).  We may not, in other words, undertake a *de novo* review of whether Bell has established a *Washington* claim. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

presented the testimony of Bell's mother. *Bell II*, 879 So. 2d at 443. Bell's attorney also presented Bell's girlfriend—who attested to "Bell's disposition and his loving relationship with their young son and her daughter"—and Bell himself at sentencing. *Id.* at 444. Based on the testimony presented, the trial court instructed the jury to consider a list of seven different mitigating factors. *Id.*

Bell now argues, however, that counsel failed adequately to investigate or present mitigating evidence on his (1) purported mental disabilities, (2) age at the time of the crime, and (3) unfortunate childhood. Bell's objections go only to the degree of his trial counsel's investigation; he claims that the attorney did not conduct enough interviews, review enough records, or call enough witnesses on his behalf. Such objections to trial strategy are typically subject to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and reviewing courts must make every effort to account for the distorting effect of hindsight on ultimately unsuccessful trial decisions. *Washington*, 466 U.S. at 689.

Bell's counsel argued youth as a mitigating factor to the jury, *Bell III*, 2008 WL 2690311, at *44, and the trial court instructed the jury to take Bell's age into account, *Bell II*, 879 So. 2d at 444. There is no constitutional requirement of further investigation or presentation of evidence on the subject of Bell's age.

With regard to Bell's childhood, the trial court instructed the jury to consider Bell's lack of education and the fact that he was raised in poverty and had an abusive and violent father. *Id.* Bell and his mother testified on the subject, and Bell's counsel interviewed several other individuals familiar with it. Though Bell has brought affidavits from additional persons saying that they would have testified on his behalf at sentencing, neither he nor the affidavits explain what additional information those witnesses would have brought if they had been interviewed or presented; they seem to be merely cumulative. *Bell II*, 879 So. 2d at 443.

10

Bell presents no more than conclusional argumentation about what difference those witnesses might have made. Although additional testimony may, in retrospect, have been helpful, we can hardly conclude that his counsel was objectively unreasonable in not presenting further testimony or that any prejudice resulted. Given the investigation and presentation of evidence actually performed, the Mississippi Supreme Court's conclusion that Bell was adequately represented meets the requirements of AEDPA.

As for Bell's mental disabilities—including his possible low intelligence and mental or emotional illnesses—no evidence was presented to the jury, but Bell's counsel made an investigation. As mentioned above, he interviewed Bell's schoolteachers. He seems also to have attempted to secure school records, and he hired a psychiatrist to evaluate Bell's intellectual functioning. *Bell III*, 2008 WL 269 WL 2690311, at *43-*44. The evidence that could have been presented after that inquiry appears to have been conflicting, to say the least, perhaps even damaging to Bell. Counsel's decision, made after investigation, not to present that evidence is therefore protected by the strong deference always afforded to the strategic decisions of trial counsel. *Washington*, 466 U.S. at 691. The Mississippi Supreme Court was not unreasonable in concluding that the decision not to present that testimony met minimal standards.

The denial of habeas relief is AFFIRMED on the two issues on which the district court granted a COA. This is without prejudice to this court's consideration of any other issue on which we may decide to grant a COA.

CARL E. STEWART, Circuit Judge, specially concurring:

While I join the majority's opinion, I write separately because the Mississippi Supreme Court failed to "clearly and expressly" hold that Bell's claims were procedurally barred due to a violation of Miss. Code Ann. § 99-39-9. Nonetheless, I concur in the judgment affirming the district court. Bell has failed to raise a claim that would allow this court to grant relief under the highly deferential standard set out in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d).

This court has previously explained that we will not review "a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the merits of the federal claim and adequate to support that judgment." *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). The majority opinion concludes that the Mississippi Supreme Court's decision rests on a state ground that is independent of the merits of Bell's federal claims. Specifically, the majority opinion states that Bell did not meet the procedural requirements found in Miss. Code Ann. § 99-39-9, which sets out the standards for filing a petition for post-conviction collateral relief. I disagree.

In *Amos*, we explained that

[p]rocedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court rendering a judgment in the case has *"clearly and expressly"* indicated that its judgment is independent of federal law, e.g., rests on a state procedural bar.

*Id*. at 338 (emphasis added). Thus, one must carefully examine the Mississippi Supreme Court's opinion to determine if it "clearly and expressly" indicated that it denied Bell's claims based on independent state law grounds.

In *Bell II*, the Mississippi Supreme Court addressed three broad issues raised by Bell on appeal: (1) "timeliness", (2) "ineffective assistance of counsel at culpability phase", and (3) "ineffective assistance of counsel during the penalty phase." *See generally, Bell II,* 879 So. 2d at 423. In addressing Bell's second claim, the Mississippi Supreme Court addressed and analyzed *fourteen* separate sub-issues over a span of ten pages: (A) cumulative error, (B) counsel's qualifications, (C) secure adequate funds for investigation, (D) secure funds for experts needed, (E) investigate critical aspects of defense, (F) jury questionnaires, (G) discrimination in jury pool, (H) voir dire, (I) meaningful and consistent theme of defense, (J) impeachment of witness), (K) stipulation of State's expert evidence, (L) objection to evidence, (M) attendance of witnesses, and (N) jury instructions. *Id.* at 430-40. The majority opinion's holding rests on the Mississippi Supreme Court's treatment of sub-issue (M), which states:

> Bell claims that counsel was ineffective because he failed to secure the attendance of witnesses to corroborate his alibi. Save Bernard Gladney, Bell fails to name the witness counsel failed to call. In a motion under Miss. Code Ann. § 99-39-9, Bell is required to: "name the state of Mississippi as respondent and shall contain . . . affidavits of the witnesses who will testify and copies of documents or records that will be offered shall be attached to the motion." *See also Lewis v. State*, 776 So. 2d 679, 682 (P16) [*sic*] (Miss. 2000) (the statute requires affidavits of those witnesses that will testify). *This issue is without merit.*

*Id.* at 440 (emphasis added).

This brief discussion by the Mississippi Supreme court is the entire analysis the majority opinion rests its holding on. But this passage does not "clearly or expressly" hold that Bell's claims are procedurally barred due to a

failure to adhere to Miss. Code. Ann. § 99-39-9. This point is especially notable because in discussing sub-issue (N), the Mississippi Supreme Court explicitly states "this issue is *procedurally barred* in accordance [with] Miss. Code Ann. § 99-39-21(2) & (3) (2000)." *Id.* (emphasis added). I conclude that the Mississippi Supreme Court did not "clearly and expressly" indicate that Bell was procedurally barred due to a violation of § 99-39-9. The Mississippi Supreme Court made no such express holding, instead it said Bell's claim was "without merit." That disposition is not the same as holding that Bell's claims were procedurally barred. The words "without merit" are not synonymous with "procedurally barred."

Furthermore, I disagree with the majority opinion's conclusions regarding the requirements found in § 99-39-9, which governs the requirements of motion and service for post-conviction proceedings. Section 99-39-9 states that a motion must contain several items, including the following.

> (e) A specific statement of the facts which are not within the prisoner's personal knowledge. The motion shall state how or by whom said facts will be proven. Affidavits of the witnesses who will testify and copies of documents *or records that will be offered shall be attached to the motion.* The affidavits of other persons and the copies of documents and records may be excused upon a showing, which shall be specifically detailed in the motion, of good cause why they cannot be obtained. This showing shall state what the prisoner has done to attempt to obtain the affidavits, records and documents, the production of which he requests the court to excuse.

Miss. Code Ann. § 99-39-9(1)(e) (emphasis added).

I do not dispute that Bell failed to exhaust his administrative remedies with respect to the eight previously unnamed witnesses. The concern is whether

Bell properly presented evidence of what Gladney would have testified to during the state court trial. If Bell had planned to call Gladney as a witness during a post-conviction proceeding, then he would have been required to attach an affidavit from Gladney to his petition for post-conviction collateral relief. He did not do so. But Bell did attach and cite to an extradition hearing where Gladney testified that Bell was in Memphis at the time of the crime at issue in this case. This qualifies as a "record" under § 99-39-9(1)(e), and was properly before the Mississippi Supreme Court. The majority opinion states that "Bell could not have established prejudice . . . without bringing live testimony from these witnesses." That is an assumption, albeit not an unreasonable one. That assumption, however, does not negate the fact that the Mississippi Supreme Court failed to "clearly and expressly" state that Bell's claims on sub-issue (M) were procedurally barred as is required under *Amos*.

I now briefly turn to the merits of Bell's ineffective assistance of counsel claim.[1] Federal habeas petitioners must demonstrate that the state court's adjudication was either: (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is merited only when the state court decision is both incorrect and objectively unreasonable regardless of whether this court would reach the same conclusion. *Woodford v. Visciotti*, 537 U.S. 19, 27 (2002). Bell has failed to meet this burden.

---

[1] I recognize that the majority opinion also rests its holding on the conclusion that Bell waived his right to argue that Gladney's affidavit serves as merely supplementary evidence to that presented before the Mississippi Supreme Court. I believe the issue of waiver is a much closer call than the majority opinion suggests. Because I would affirm the district court's judgment on the merits, I do not reach the waiver issue.

After a careful review of the Mississippi Supreme Court's opinion, I can find no "objectively unreasonable" application of *Supreme Court* law related to the ineffective assistance of counsel claim. It is important to remember that the inquiry under AEDPA focuses solely on the state court's application of Supreme Court, not court of appeals, law. I mention this because under the law of this circuit, Bell has a rather strong claim for ineffective assistance of counsel. Before Congress passed AEDPA, this court held that failure to investigate known alibi witnesses constitutes ineffective assistance of counsel. *Bryant v. Scott*, 28 F.3d 1411, 1418 (5th Cir. 1994). Bell has not cited, and I have not found, a Supreme Court case with a similar holding as that found by this court in *Bryant* regarding a failure on the part of counsel to investigate known alibi witnesses. Thus, Bell has failed to establish that the Mississippi Supreme Court's decision is an incorrect or objectively unreasonable application of Supreme Court law. I would therefore affirm the district court's judgment on the merits of Bell's ineffective assistance of counsel claim.