WILSON, Circuit Judge,
dissenting:
William L. Sullivan is an unsympathetic criminal defendant who killed a man. The *1112 majority opinion makes that clear in its description of the facts. Yet, the Sixth Amendment to the United States Constitution entitles him to “the Assistance of Counsel for his defense”, and the Supreme Court has interpreted that to mean the “effective” assistance of counsel. Strickland, v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Sullivan’s only defense to the charge of first degree murder was that he acted in self-defense, and there was a crucial witness available to testify in support of this defense. His lawyer’s failure to interview the only eyewitness who could corroborate Sullivan’s claim of self-defense is surely ineffective assistance of counsel.
Kirk’s ineffective performance prejudiced Sullivan. Understandably, the majority focuses only on Strickland’s prejudice prong in finding that Sullivan failed to prove ineffective assistance of counsel. The majority must focus on the prejudice prong because Kirk’s actions were utterly ineffective under Strickland’s performance prong. As the majority notes, the district court found that Kirk was aware that Renee was the only eyewitness and never interviewed her. A lawyer making a strategic decision not to put a witness on the stand can many times be defended as reasonable. See, e.g., Alexander v. Dugger, 841 F.2d 371, 375 (11th Cir.1988). A lawyer can rarely, however, claim that it is reasonable never even to talk to the only eyewitness to the events surrounding the alleged crime. Determining the facts is the most basic requirement of being able to mount an effective (or even a competent) defense. See House v. Balkcom, 725 F.2d 608, 618 (11th Cir.1984) (“Pretrial investigation, principally because it provides a basis upon which most of the defense case must rest, is, perhaps, the most critical stage of a lawyer’s preparation.”). A lawyer does not have to explore every hypothetical situation that could have possibly occurred. Id. If a lawyer, however, is aware that there is only one eyewitness to the events at issue, the lawyer should at the very least find out what that witness saw. See id. (“While we do not require that a lawyer be a private investigator in order to discern every possible avenue which may hurt or help the client, we do require that the lawyer make an effort to investigate the obvious.”). Kirk did not do this and thus failed in his duties to his client.[1]
I disagree with the majority’s conclusion that Renee’s testimony would not have mattered. The majority holds that Renee’s testimony, even if admitted at Sullivan’s trial, would not have changed the outcome because of its internal inconsistencies and inconsistencies with the rest of the evidence regarding whether Smith had a knife. Indeed there were inconsistencies between Renee’s testimony that Smith had a knife and the overwhelming evidence indicating that he did not. The majority fails to recognize, however, that Renee’s testimony was entirely consistent with Sullivan’s claim that Smith, with or without a knife, was nevertheless the aggressor. Both times when Renee offered sworn testimony, she testified that Smith attacked Sullivan first.
The inconsistencies regarding whether or not Smith had a knife indicate that Renee’s testimony would arguably not have changed the outcome with regard to *1113 Sullivan’s self-defense claim.[2] Nevertheless, because Renee’s testimony was unwaveringly consistent with Sullivan’s claim that Smith was the aggressor, there is still a reasonable probability that the jury could have, at the least, found that Sullivan was moved to act by “a sudden heat of passion caused by provocation recognized by law” and reduced the verdict to manslaughter if presented with Renee’s testimony. Ala.Code §§ 13A-6-2(b); 13A-6-3(a)(2).[3] At one point during oral argument, the state, which appeared more focused on arguing that Kirk’s representation satisfied Strickland’s performance prong, even conceded that prejudice existed if one assumed inadequate performance:
Court: Let’s assume that this defense attorney, what’s his name, Tommy King?
State: Uh, Kirk.
Court: Tommy Kirk. He had interviewed this little girl, and he had decided, “She’s going to help my client. I’m gonna put her on the witness stand.” She’d taken the witness stand and she’d testified that Smith was the aggressor, and not Sullivan, and Sullivan was defending himself. If she had testified to that, could that have led to a conviction of a lesser charge like manslaughter, or even, uh, an acquittal?
State: Yes.[4]
The Supreme Court provides that prejudice takes place when “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. Given the great potential that Renee’s eyewitness testimony had to affect the outcome of Sullivan’s case by supporting a conviction of a lesser included charge, which would have resulted in a shorter sentence, confidence in the outcome of the proceeding is undermined.
Because Renee was the sole eyewitness and consistently supported Sullivan’s claim that Smith was the aggressor, Kirk’s failure to so much as interview her undermines the outcome of the case and prejudiced Sullivan. See Sanders v. Cook, 99 Fed.Appx. 778, 781 (9th Cir.2004) (unpublished memorandum) (state court erred in finding that failure to interview and call sole eyewitness was not prejudicial “[i]n a case in which the determinative question was whether the defendant intended to discharge the weapon, and where only the testimony of the eyewitnesses was capable of providing direct evidence as to how the discharge occurred”); see also, e.g., Riley v. Payne, 352 F.3d 1313, 1321 (9th Cir.2003) (“Counsel’s unexplained failure to interview a witness who would have said that the victim in anger threatened to shoot Riley undermines our confidence in the jury verdict rejecting Riley’s plea of self- *1114 defense. We conclude, that ... Riley was prejudiced by Clower’s omission.”); Anderson v. Johnson, 338 F.3d 382, 393-94 (5th Cir.2003) (counsel’s failure to interview one of two adult eyewitnesses was ineffective assistance of counsel); Chambers v. Armontrout, 907 F.2d 825, 831 (8th Cir.1990) (en banc) (counsel’s failure to interview only eyewitness who could have corroborated defendant’s claim of self-defense was ineffective assistance of counsel); Mitchell v. Ayers, 309 F.Supp.2d 1146, 1156 (N.D.Cal.2004) (attorney’s failure to interview “an available witness who would have corroborated petitioner’s otherwise uncorroborated testimony as to the reason petitioner entered the Gonzalez home, specifically, that he did so out of fear for his safety and not for the purpose of committing theft” was ineffective assistance of counsel that prejudiced petitioner).
Although I lament the logistical inconvenience of re-trying Sullivan so long after the events have taken place, this does not excuse the constitutional violation. Sullivan, unbecoming though he may be, still deserved effective representation. He did not receive it, and to say that he did is to render ineffective assistance of counsel claims virtually meaningless. I would therefore remand the case to be re-tried so that Sullivan can have his day in court with at least the minimum level of effective representation the Constitution guarantees.

. Amazingly, Kirk tried to defend his decision by relying on Renee’s age. Imagine if the state adopted a similar view — people could commit murder and have the police interview no eyewitnesses if the only eyewitnesses were young children. We would be outraged at a prosecutor who failed to interview a sole child eyewitness in a murder case; we should be equally intolerant of a defense attorney who blunders just as egregiously.

. Although even this is debatable. The police indeed never recovered the knife that Renee claimed Smith had. However, they never recovered Sullivan's knife either. The absence of the knife does not definitively mean that it did not exist.

. Sullivan received a sentence of life imprisonment for first degree murder. If convicted of manslaughter, he would have been sentenced to a maximum of 20 years imprisonment. Ala.Code §§ 13A-6-3(b); 13A-5-6(a)(2). Had this been the case, Sullivan would be close to completing his sentence because he was sentenced on April 16, 1990.

.When pressed on this issue, the state backpedaled from this statement without any clear explanation, perhaps realizing that this concession was completely inconsistent with the state’s position that, even if Sullivan's counsel's failure to interview Renee satisfied Strickland’s performance prong, such failure would not have prejudiced Sullivan.