# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 23, 2011

Lyle W. Cayce
Clerk

No. 10-10200

ELIZABETH BRIDGES

Petitioner-Appellee

v.

RICK THALER, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellant

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:07-CV-1203

Before REAVLEY, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:*

Respondent-Appellant Rick Thaler, Director of the Correctional Institutions Division of the Texas Department of Criminal Justice ("the State"), appeals the district court's grant of habeas relief under 28 U.S.C. § 2254 to Petitioner-Appellee Elizabeth Bridges ("Bridges"). We vacate and remand to the district court to enter judgment in favor of the respondent.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-10200

## I. Factual and Procedural Background

On April 21, 2005, after rejecting a guilty plea offer of deferred adjudication probation, Bridges was convicted of knowingly and intentionally causing serious bodily injury to a child younger than fourteen years of age, in Dallas County, Texas. She was sentenced to twenty-five years in prison.

The testimony at trial was as follows. On March 27, 2001, Lakeita Parker ("Parker"), a friend of Bridges, left her five-month-old son, Devine, with Bridges around 9:30 p.m.[1] Also present were Bridges' eleven-year-old cousin, Mattie, and Bridges' fifteen-month-old nephew, Benny. While Parker was gone, her son Devine suffered a serious head injury. Bridges called 911 for assistance around 10:30. Paramedics arrived at the apartment complex and took the apparently unconscious child to the hospital where he was placed on life support. Bridges told Robert Holloway, Jr. ("Holloway"), a paramedic with the Dallas Fire Rescue Department, that Devine's injuries occurred when Benny flipped him out of his car seat and he hit his head on a wooden coffee table. When Parker returned around 10:30 p.m., Bridges called her from the hospital and told her the same version of events that she told Holloway. The day after the incident, Bridges repeated this version of events to Detective Dan Lesher ("Lesher"), who was tasked with investigating the case. Lesher photographed Bridges' demonstration of what she had seen. She made a written statement and explained that she had left the apartment to go downstairs to use the telephone, and saw the injury occur as she returned through the front door of the apartment. In that statement she also explained, "my cousin [Mattie] told me she took him in the kitchen and my nephew flipped him over, but I didn't see it."

Bridges' trial testimony was that she was not present when Devine was injured, and that Devine was on the couch in the car seat crying when she

---

[1] Parker testified that Bridges had previously briefly dated Devine's father.

returned from making a phone call. She explained that she initially told the 911 operator, Devine's mother, and Lesher a different story because she was worried that authorities might punish her for leaving Devine in the care of an eleven-year-old.

Dr. Donna Persaud ("Dr. Persaud"), a pediatrician and expert on child abuse who examined Devine the night of the incident, testified that the baby sustained brain swelling, blood between the brain and its covering, and a large fracture. The nature of the injuries gave her considerable concern that the injuries were non-accidental. A fall onto a coffee table could not have caused Devine's injuries, according to her testimony.

Mattie testified at trial that Devine was injured when he fell off of the kitchen table. Mattie stated that she had placed Devine in his unbuckled car seat on the kitchen table, went into another room, heard something fall, entered the kitchen, and found Devine on the floor. As she picked Devine up, Bridges and Dwayne Greene ("Greene") entered the apartment, according to Mattie. Mattie denied having initially told Lesher a different story. As a rebuttal witness, Lesher testified that the day after the incident Mattie told him that she had heard a baby crying, rushed into the living room, and there saw Devine lying on the floor with Bridges standing over him. Bridges' attorney did not object to Lesher's testimony regarding Mattie's prior statement.

The Texas Fifth Court of Appeals affirmed Bridges' conviction, *Bridges v. Texas*, No. 05-05-00607-CR, 2006 Tex. App. LEXIS 10523 (Tex. App.-Dallas, Mar. 8, 2006), and Bridges did not file a petition for discretionary review by the Court of Criminal Appeals. Bridges filed an application for a state writ of habeas corpus on July 11, 2006. Bridges made several claims, including that her trial counsel's failure to object to hearsay constituted ineffective assistance of counsel. The Texas trial court ordered an affidavit from Bridges' trial attorney, Carl Hayes ("Hayes"), which he provided. On October 24, 2006, the trial court

No. 10-10200

issued its findings of fact and conclusions of law recommending that Bridges be denied relief.  The Court of Criminal Appeals denied Bridges' application without written order on the findings of the trial court on December 6, 2006.  On May 30, 2007, Bridges filed a pro se petition for federal habeas relief under 28 U.S.C. § 2254.  The magistrate judge ordered an evidentiary hearing, at which Dr. Persaud and Hayes were witnesses.  On January 25, 2010, the magistrate judge recommended that the petition be granted on the ground that "defense counsel's failure to object to Lesher's rebuttal testimony and, if the evidence was admitted, to request a limiting instruction, constituted deficient performance that prejudiced" Bridges. *Bridges v. Thaler*, No. 3:07-CV-1203-K, 2010 U.S. Dist. LEXIS 10523 (N.D. Tex. Jan. 25, 2010).   The district court adopted the magistrate judge's findings, conclusions and recommendation, and on February 5, 2010, entered an order conditionally granting Bridges' petition. The State timely appealed.  The court below granted the State's motion for a stay pending appeal.

## II. Exhaustion of State Remedies

To bring her habeas claim in federal court, Bridges must have exhausted all available state remedies.  *See* 28 U.S.C. § 2254(b)(1). "Whether a federal habeas petitioner has exhausted state remedies is a question of law reviewed *de novo*." *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003).  We interpret a pro se petitioner's filings liberally because it is inequitable to penalize a pro se litigant for "lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States*, 312 F.3d 191, 194 (5th Cir. 2002).  Bridges' state and federal habeas petitions are nearly identical with respect to her claim that Hayes' failure to respond to Lesher's testimony regarding Mattie's original statement constituted ineffective assistance of counsel.[2]  Bridges did not raise

---

[2] In a memorandum supporting her state habeas petition, Bridges stated: "(G) Ground no. seven (7): Perjury/Hearsay . . . Failure to rise [sic] objection to perjury, the Detective, Dan

4

No. 10-10200

a new claim on appeal. We reject the State's argument that Bridges never presented the state habeas court with her claim that her attorney's failure to request a limiting instruction constituted ineffective assistance of counsel. Bridges' claim regarding her attorney's failure to request a limiting instruction was implicit in her hearsay claim. *See Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) ("Although we recognize that the plain language of Bledsue's direct state appeal and second state habeas petition did not explicitly pinpoint the issue of weight, his claim of insufficient proof of intent implicitly presented the issue of weight."). As such, we find that Bridges exhausted all available state remedies.

### III. Ineffective Assistance of Counsel

#### a. Standard of Review

"In a habeas corpus appeal, we review findings of fact for clear error and issues of law *de novo* using the same standards as the district court." *Anderson*, 338 F.3d at 389-90. The Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1), governs Bridges' appeal. *See id.* at 390. Under AEDPA, "a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418 (2009) (quoting 28 U.S.C. § 2254(d)(1)).

#### b. Discussion

The "clearly established federal law" applicable to Bridges' claim is the two-prong test of *Strickland v. Washington,* 466 U.S. 668 (1984). *See Anderson*,

---

Lesher . . . and Hearsay which was all proven to be false by appellant's witnesses . . . after being informed of this mishaps several times during trial." In her federal petition she provided: "[Attorney] [m]ade no objections to hearsay and perjury from state's witness Det. Dan Lesher." Her petition clearly makes a claim based on the alleged hearsay issue. We thus reject the State's argument that it was limited to the alleged perjury issue.

No. 10-10200

338 F.3d at 391. Under *Strickland*, Bridges must show both that Hayes' performance was deficient ("cause") and that this deficiency prejudiced her defense ("prejudice"). *See id.* In this case we address only the prejudice prong as it is dispositive of this appeal. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### 1. Prejudice

Under *Strickland*'s prejudice prong, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.* "Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696. Because the state court never reached a conclusion about prejudice, we will consider the prejudice element of *Strickland de novo*. *See Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("[b]ecause the state courts found the representation adequate, they never reached the issue of prejudice, and so we examine this element of the *Strickland* claim *de novo*") (internal citations omitted).

Bridges argues that there is a reasonable probability that the jury would have reached a different conclusion had the court provided limiting instructions on Lesher's rebuttal testimony. Lesher's testimony regarding Mattie's original statement was not admissible as substantive evidence, but was admissible as non-hearsay offered as "extrinsic evidence" for impeachment purposes. *See* TEX. R. EVID. 613. We find no prejudice sufficient to meet *Strickland*, however, because there is not a reasonable probability that a limiting instruction would

6

No. 10-10200

have changed the outcome of this case. There was ample evidence of Bridges' guilt: Bridges repeatedly changed her story and offered inconsistent explanations of how Devine's injuries transpired; Devine's injuries did not appear to be a result of an accident and could not have been caused by a bump on the table; and there was evidence that Bridges was the only adult present in the apartment when the injury occurred.

First, the jury could have discredited Bridges' explanation of Devine's injuries and interpreted Bridges' shifting her story as evidence of her consciousness of guilt. We agree with the State's contention that the jury may have found Bridges' testimony unbelievable because on the night Devine was injured she claimed she had personally seen him fall, then later told authorities that she was not present when Devine was hurt, and admitted that she had lied in her written statement. *See Kemmerer v. State*, 113 S.W.3d 513, 516 (Tex. App.-Houston 2003, no pet.) (denying a challenge to the sufficiency of evidence because "the jury could have viewed appellant's changing versions of the incident as evidence of guilt"). Bridges' explanation that she lied because she was worried about confessing that she had left the infant alone with an eleven-year-old may have been unpersuasive to the jury, especially since in her lie, she still stated that she left the infant alone with an eleven-year-old.

Dr. Persaud testified that she was concerned that the injury was non-accidental. The medical assessment Dr. Persaud wrote in evaluating Devine's injuries provided, "[t]his child has suffered massive brain injury due to high forces. The mechanism involves blunt force and acceleration. The child's injury is unexplained by the history offered. There is considerable concern of non-accidental trauma." She explained that a knock of the head on the coffee table (Bridges' initial explanation) could not have caused the injury.

Finally, the jury heard evidence, aside from Lesher's testimony regarding Mattie's original statement, that Bridges was the only adult present when the

7

No. 10-10200

accident occurred.  Bridges told paramedics, the child's mother, and Lesher that she had seen the child hit his head on the coffee table as she was entering the apartment.  Though Lesher's testimony regarding Mattie's original statement placed Bridges closer to Devine than did any other evidence, we reject Bridges' argument that without this testimony there would have been no evidence that Bridges was present in the apartment at the time of the incident.

Moreover, we agree with the State that had the jury been instructed to consider Lesher's testimony only for impeachment of Mattie, the jury may well have completely disregarded Mattie's testimony.  The "trier of fact is always free to selectively believe all or part of the testimony proffered and introduced by either side." *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  Were the jury to disregard Mattie's testimony, including Mattie's explanation that she had left Devine un-strapped in a car seat on the kitchen table from which he fell, Bridges had little evidence in her defense, other than her own conflicting testimony.  Greene testified that the child was already injured when he  walked into the apartment with Bridges, but he could not rule out the possibility that Bridges had injured the child before he arrived.

Based on the evidence presented at trial we find it highly improbable that the jury would have believed Bridges' defense of accident, even were it to have been instructed properly on the use of Mattie's testimony.  In sum, Bridges has not met her burden of showing a reasonable probability that the jury's decision would have been different had the trial court limited the use of Lesher's testimony regarding Mattie's original statement.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is VACATED, and REMANDED to the district court with instructions to enter a judgment in favor of the respondent.